## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

LETICIA CARRASCO,

      Plaintiff,

v.                                    No. CV 20-548 MV/CG

KILOLO KIJAKAZI,[1]
Commissioner of the
Social Security Administration,

      Defendant.

### <u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>

**THIS MATTER** is before the Court on Plaintiff Leticia Carrasco's *Motion to Remand or Reverse Agency Decision*, (Doc. 26), and her *Brief in Support of Motion to Remand*, (Doc. 27), (collectively, the "Motion"), filed April 20, 2021; Defendant Commissioner Kilolo Kijakazi's *Brief in Response to Plaintiff's Motion to Reverse and Remand the Agency's Administrative Decision* (the "Response"), (Doc. 28), filed June 25, 2021; and Ms. Carrasco's *Reply Brief* (the "Reply"), (Doc. 29), filed July 2, 2021.

Ms. Carrasco applied for disability insurance benefits on July 13, 2015, alleging disability beginning on May 24, 2015. (Administrative Record "AR" 89-90). In her application, Ms. Carrasco claimed she was unable to work due to rhabdomyosarcoma, liposarcoma, and soft tissue sarcoma. (AR 89-90). Ms. Carrasco's application was denied initially on April 4, 2016, and upon reconsideration on September 13, 2016. (AR 105, 114). Ms. Carrasco requested a hearing before an Administrative Law Judge ("ALJ"), which was held on August 15, 2019, before ALJ Cole Gerstner. (AR 15).

---

[1] Kilolo Kijakazi was appointed Acting Commissioner of the Social Security Administration on July 9, 2021.

At the hearing, Ms. Carrasco appeared with her attorney Sofia R. McDermott and impartial Vocational Expert ("VE") Karen Provine. (AR 15). ALJ Gerstner issued his decision on October 7, 2019, finding Ms. Carrasco not disabled at any time from her alleged onset date, May 24, 2015, through the date of his decision. (AR 25). Ms. Carrasco requested review by the Appeals Council, which was denied on April 28, 2020, making ALJ Gerstner's unfavorable decision the Commissioner's final decision for purposes of judicial review. (AR 1). Ms. Carrasco now challenges ALJ Gerstner's October 7, 2019 decision denying her claim for disability insurance benefits. *See* (Doc. 26); (Doc. 27).

In her Motion, Ms. Carrasco argues the following errors require remand: (1) ALJ Gerstner failed to account for, or make any finding concerning, Ms. Carrasco's ability to adapt to changes in the workplace; and (2) ALJ Gerstner improperly disregarded Dr. Darakjy's opinion that Ms. Carrasco would have "marked" limitations in adaptation. (Doc. 26 at 1).

On April 15, 2021, United States District Judge Martha Vazquez referred this matter to the undersigned to review ALJ Gerstner's decision, conduct legal analysis, and recommend an ultimate disposition, pursuant to 28 U.S.C. § 636(b). (Doc. 25). The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because the Court finds that ALJ Gerstner did not commit reversible legal error as alleged by Ms. Carrasco, the Court **RECOMMENDS** Ms. Carrasco's Motion be **DENIED** and the case be **DISMISSED WITH PREJUDICE**.

## I.      Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An

ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington*, 37 F.3d at 1439). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520.

At the first four steps of the SEP, the claimant bears the burden of showing (1)

4

she is not engaged in "substantial gainful activity"; (2) she has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is

expected to last for at least one year; and either (3) her impairment(s) meet or equal

one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404,

subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R.

§ 404.1520(a)(4)(i-iv); *see also Grogan*, 399 F.3d at 1261. If the ALJ determines the

claimant cannot engage in past relevant work, the ALJ will proceed to step five of the

evaluation. 20 C.F.R. § 404.1520(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the

Commissioner bears the burden of showing that the claimant is able to perform other

work in the national economy, considering the claimant's RFC, age, education, and

work experience. *Grogan*, 399 F.3d at 1261.

### III.    Background

In her application for disability insurance benefits, Ms. Carrasco claimed she was

limited in her ability to work due to rhabdomyosarcoma, liposarcoma, and soft tissue

sarcoma; on reconsideration, she also alleged anxiety and depression. (AR 89-90, 95).

At step one, ALJ Gerstner determined Ms. Carrasco had not engaged in substantial

gainful activity since May 24, 2015, her alleged onset date. (AR 17). At step two, ALJ

Gerstner found Ms. Carrasco had the following severe impairments: a history of

malignant tumor on left thigh status post excision and radiation treatment, a history of

thyroid cancer status post excision, depression, anxiety, osteoarthritis in the right ankle,

osteoarthritis in the left shoulder, peripheral vascular disease, diabetes mellitus, and

obesity. (AR 18).

At step three, ALJ Gerstner determined Ms. Carrasco's impairments, solely or in

combination, did not meet or equal one of the listed impairments in 20 C.F.R.

§§ 404.1520(d), 404.1525, and 404.1526. (AR 18). ALJ Gerstner then found Ms.

Carrasco had the RFC to perform "light work." (AR 20). In addition, ALJ Gerstner found

that Ms. Carrasco can lift, carry, push and pull up to twenty pounds occasionally and ten

pounds frequently; she can sit, stand, and walk for six hours in an eight-hour workday;

and she can occasionally reach overhead to the left. (AR 20). He also found Ms.

Carrasco was restricted to climbing ramps and stairs occasionally, but never climbing

ladders, ropes, or scaffolds; she can balance occasionally, stoop occasionally, kneel

occasionally, and crouch occasionally, but never crawl. (AR 20). He found she is

restricted to working at unprotected heights occasionally, but never working around

moving mechanical parts; she can work in dust, odors, fumes and pulmonary irritants

occasionally, in extreme cold occasionally, and in extreme heat occasionally. (AR 20).

Finally, with regard to Ms. Carrasco's mental RFC, ALJ Gerstner found Ms. Carrasco is

able to perform simple, routine tasks, and her judgment is limited to simple work-related

decisions. (AR 20). He found she can occasionally interact with coworkers, supervisors,

and the public, and in dealing with changes in the work setting, she is able to make

simple work-related decisions. (AR 20).

    In formulating Ms. Carrasco's RFC, ALJ Gerstner stated he considered Ms.

Carrasco's symptoms and the extent to which those symptoms could reasonably be

accepted as consistent with the objective medical and other evidence, as required by 20

C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 810). ALJ Gerstner

stated he considered opinion evidence consistent with the requirements of 20 C.F.R.

§ 404.1527, which applies to claims filed before March 27, 2017.[2] (AR 20). He concluded that while Ms. Carrasco's impairments could be expected to cause some of her alleged symptoms, the intensity, persistence, and limiting effects Ms. Carrasco described were not entirely consistent with the evidence in the record. (AR 21).

In weighing the opinion evidence, ALJ Gerstner gave little weight to the state agency medical consultant Janice Kando, MD, who stated that Ms. Carrasco did not have a severe physical impairment. (AR 22). He gave partial weight to the opinion of state agency medical consultant Karl K. Boatman, MD, as he said it did not account for all of Ms. Carrasco's limitations. (AR 22). He also gave only partial weight to the opinion of state agency psychologist Jennifer Darakjy, PhD, as he found no support for marked limitations in the medical record, and found that the record shows Ms. Carrasco's mental impairments are stable with the use of medications. (AR 23). ALJ Gerstner gave significant weight to the opinion of state agency psychologist Jason Gunter, PhD. (AR 22). Finally, he gave limited weight to the statements of Ms. Carrasco and her sister, Yolanda Delgado. (AR 23).

At step four, ALJ Gerstner found Ms. Carrasco incapable of performing her past relevant work as a vegetable harvest worker. (AR 23). ALJ Gerstner proceeded to step five, finding Ms. Carrasco to be a "younger individual" who has at least a high school education, and can communicate in English. (AR 24). ALJ Gerstner found, given VE

---

[2] The agency issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017); *compare* 20 C.F.R. § 404.1527 ("Evaluating opinion evidence for claims filed before March 27, 2017"), *with* 20 C.F.R. § 404.1520c ("How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017"). Because Ms. Carrasco filed her claim on July 13, 2015, the prior regulations apply to this matter.

Provine's testimony and Ms. Carrasco's age, education, work experience, and assessed RFC, she could perform other work as a marker, router, collator operator, routing clerk, cafeteria attendant, or silver wrapper. (AR 24-25). After finding Ms. Carrasco was able to perform other work existing in significant numbers in the national economy, ALJ Gerstner concluded she was "not disabled" as defined by 20 C.F.R. § 404.1520(g). (AR 25). Ms. Carrasco's petition to this Court followed. (Doc. 1).

## IV.   Analysis

Ms. Carrasco presents two arguments in her Motion. (Doc. 26 at 1); *see* (Doc. 27 at 5). First, she alleges ALJ Gerstner failed to account for, or make any finding concerning, her ability to adapt to changes in the workplace, in spite of the moderate limitation assessed by Dr. Gunter and the marked limitation assessed by Dr. Darakjy in this area. *Id.* Ms. Carrasco also alleges that the hypothetical ALJ Gerstner presented to VE Provine improperly excluded any limitation in the ability to adapt. (Doc. 27 at 5). She argues ALJ Gerstner "repeats verbatim the finding on the ability to understand and carry out instructions" in his RFC assessment and "omits any consideration or weighing of [Ms. Carrasco's] ability to adapt to changes in the workplace in a routine setting, which is . . . the fourth basic mental demand required of unskilled work." *Id.*

Second, Ms. Carrasco contends ALJ Gerstner improperly disregarded Dr. Darakjy's opinion that Ms. Carrasco would have "marked" limitations in adaptation. *Id.* For these reasons, Ms. Carrasco requests that the Court reverse the Commissioner's decision and remand the matter for a new administrative hearing. *Id.* at 10.

In response, the Commissioner maintains that ALJ Gerstner's decision is supported by substantial evidence and free of any harmful legal error. (Doc. 28 at 8). In

particular, the Commissioner asserts ALJ Gerstner was not required to include Dr. Gunter's assessment of a moderate limitation in adapting to changes in the RFC. *Id.* at 1. The Commissioner argues that in any event, the assessed RFC does incorporate a moderate limitation regarding changes in the workplace, as "the RFC for simple, routine tasks does not conflict with that assessment," and that there was thus no harmful error. *Id.* at 1, 5.

Finally, the Commissioner maintains that ALJ Gerstner provided good reasons for rejecting the portion of Dr. Darakjy's opinion that states Ms. Carrasco had a marked limitation in her ability to maintain attention and concentration, and adapt to changes in the workplace. *Id.* The Commissioner argues that ALJ Gerstner reasonably discounted Dr. Darakjy's opinion, inasmuch as he articulated that there was no support in the record for Dr. Darakjy's opinion that Ms. Carrasco had marked limitations, and highlighted inconsistencies within Dr. Darakjy's opinion itself. *Id.* at 6-7. As such, the Commissioner contends Ms. Carrasco's claim for disability was properly denied at the administrative level. *Id.* at 8.

### A. Whether ALJ Gerstner Properly Considered the Opinion Evidence

Although it is not required that an ALJ discuss every piece of evidence, he is required to discuss, at a minimum, the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. § 404.1527(e)(2)(ii)). Of course, it is not necessary for an ALJ to delineate the direct correspondence between an RFC finding and a specific medical opinion. *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012). However, an ALJ cannot "pick and choose" through a medical opinion, taking only the parts that are favorable to a finding

of nondisability. *See id.* at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). Furthermore, the ALJ must at least explain his decision in a manner that is "sufficiently specific to [be] clear to any subsequent reviewers." *Langley*, 373 F.3d at 1119 (citation omitted); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007). The Court must be able to not only determine the weight the ALJ affords to a given medical opinion, but also to follow the ALJ's reasoning for that weight. *See Guadagnoli v. Colvin*, 1:15-cv-0214 MCA/LF, 2016 WL 9777190, at *6 (D.N.M. June 16, 2016), *report and recommendation adopted*, 1:15-cv-0214 MCA/LF, 2016 WL 10179287 (D.N.M. July 8, 2016) (finding error where the ALJ's weight analysis left the Court "to guess at what overall medical evidence the ALJ relied on to come to [a] middle ground") (internal quotation marks omitted).

A medical opinion is defined as "statements from acceptable medical sources that reflect judgment about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Conversely, medical assessments that "go beyond purely medical findings to reach 'issues reserved to the Commissioner'—such as the claimant's RFC . . . and the ultimate question of disability—'are not medical opinions.'" *Lakey v. Barnhart*, 127 F. App'x 455, 457 (10th Cir. April 5, 2005) (citing 20 C.F.R. § 404.1527(e)). Indeed, "the agency will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* (citations omitted).

Every medical source opinion[3] should be weighed by the ALJ in consideration of

---

[3] *See supra*, n.2.

the following "deference factors": (1) the length of the treatment relationship and the

frequency of examination; (2) the nature and extent of the treatment relationship,

including the treatment provided and the kind of examination or testing performed; (3)

the degree to which the physician's opinion is supported by relevant evidence; (4)

consistency between the opinion and the record as a whole; (5) whether or not the

physician is a specialist in the area upon which an opinion is rendered; and (6) other

factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R.

§ 404.1527(c)-(d).

ALJs need not expressly discuss each of the six factors. *Oldham*, 509 F.3d at

1258. However, the ALJ must give good reasons that are "sufficiently specific to [be]

clear to any subsequent reviewers" for the weight that they ultimately assign the

opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal

error. *See Kerwin v. Astrue*, 244 F. App'x 880, 884 (10th Cir. 2007); *see also Clifton v.

Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

An ALJ's reasoning is not sufficiently specific if they merely state an opinion is

unsupported by or inconsistent with the medical evidence without further explanation.

*Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 F. App'x 788, 792-793

(10th Cir. 2008). In addition, "[a]n ALJ is not entitled to pick and choose through an

uncontradicted medical opinion, taking only the parts that are favorable to a finding of

nondisability." *Haga*, 482 F.3d at 1208 (citations omitted). Instead, an ALJ "must . . .

explain how any material inconsistencies or ambiguities in the evidence in the case

record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the

Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

          i.    *ALJ Gerstner's Analysis of Dr. Gunter's Opinion*

Ms. Carrasco argues ALJ Gerstner did not address her ability to respond appropriately to changes in the work setting either in his hypothetical to VE Provine, or in his assessed RFC, despite Dr. Gunter's rating of her limitation on that ability as "moderate." (Doc. 27 at 5). Ms. Carrasco argues that the omission of any mention or finding of her ability to adapt is error, as "adaptability is a critical part of functional capacity." *Id.* at 7. She argues that there is no evidence that the jobs ALJ Gerstner determined she can do would accommodate her limited ability to adapt, because his hypothetical to VE Provine did not include this moderate limitation. *Id.* Finally, she argues that ALJ Gerstner's failure to mention adaptability ignores the medical evidence. *Id.* at 8.

In response, the Commissioner maintains that ALJ Gerstner was not obligated to include in his decision all the moderate limitations listed in Dr. Gunter's Mental RFC Assessment worksheet, but that he instead "correctly looked to Dr. Gunter's subsequent narrative opinion—which was the formal assessment of [Ms. Carrasco's] mental impairments." (Doc. 28 at 4). The Commissioner alleges that even if ALJ Gerstner had been required to include all Dr. Gunter's assessed moderate limitations, the assessed RFC accounts for "any moderate limitation in her ability to adapt to a work setting," and for "Dr. Gunter's finding that [Ms. Carrasco] could adapt to a work setting and forewarned changes in a usually stable work setting." *Id.* at 6.

Dr. Gunter, a state agency psychologist, evaluated Mr. Carrasco in 2016. (AR 97). He noted that for Ms. Carrasco, "[t]he most pressing issues appear to be motivation and adaptation. This produces limitations in her ability to consistently perform at work." (AR 96-97). He stated, however, that Ms. Carrasco "is able to adapt to work setting and some forewarned changes in a usually stable work setting." (AR 101). In the non-narrative section of his evaluation, Dr. Gunter ultimately concluded that Ms. Carrasco's "ability to respond appropriately to changes in the work setting" is "[m]oderately limited." (AR 100).

In determining Ms. Carrasco's mental RFC, ALJ Gerstner gave significant weight to Dr. Gunter's opinion. (AR 22). He discussed the opinion in detail, noting that Dr. Gunter assessed "only mild mental limitations, with moderate limitations maintaining concentration, persistence, and pace." (AR 22). He found this assessment "generally consistent with the medical evidence," explaining that Ms. Carrasco's cancer, her thyroid removal, and the consequences of her treatment "have caused fatigue that in combination with her other physical and mental conditions, has affected [Ms. Carrasco's] ability to maintain concentration, persistence, and pace." (AR 22). ALJ Gerstner did not explicitly mention Dr. Gunter's assessment of Ms. Carrasco's ability to adapt to change. *See* (AR 15-25).

> ii.   *Whether ALJ Gerstner's Failure to Discuss Dr. Gunter's Assessment of a Moderate Limitation on Ms. Carrasco's Ability to Adapt to Change was Error*

The parties do not dispute that Dr. Gunter's report constitutes a medical opinion. *See generally* (Doc. 27); (Doc. 28); *see also* 20 C.F.R. § 404.1527(a)(1) (defining a medical opinion). The parties also do not dispute that ALJ Gerstner failed to explicitly

discuss Dr. Gunter's opinion that Ms. Carrasco suffers from a moderate limitation on her ability to adapt to changes in the workplace. *See* (Doc. 27); (Doc. 28). However, the parties dispute whether this failure constitutes harmful error. (Doc. 28 at 5).

Indeed, ALJs are prohibited from cherry-picking only the parts of an opinion that are favorable to a finding of nondisability. *Haga*, 482 F.3d at 1208. "[W]here a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must express those impairments in terms of work-related functions or work-related mental activities.'" *Saavedra v. Berryhill*, 1:16-cv-822 LF, 2018 WL 324236, at *6 (D.N.M. Jan. 8, 2018) (internal quotations omitted) (citing *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished)). "[A]n administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016). Thus in certain cases, limiting a claimant to unskilled or simple work can be understood as incorporating moderate mental limitations assessed by the claimant's physician.

In *Jaramillo v. Colvin*, the Tenth Circuit explained, "the basic mental demands of [] unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; *and to deal with changes in a routine work setting*." *Jaramillo*, 576 F. App'x at 875 (quoting SSR 85-15, 1985 WL 56857, at *4) (quotation marks omitted) (emphasis added). The Court elaborated that limiting a claimant to "unskilled work" could be understood to incorporate "the specific mental abilities" enumerated in SSR 85-15. *Id.* at 875-876. Then, in *Smith v. Colvin*, the Tenth Circuit expressly recognized that an RFC restriction to "simple tasks and work requiring only routine supervision or

14

only superficial interaction with supervisors and peers" accounted for moderate nonexertional impairments, including a moderate impairment in the ability to "respond appropriately to changes in the workplace." *Smith*, 821 F.3d at 1268-69.

These Tenth Circuit cases are consistent with the understanding that an ALJ need not verbatim recite a physician's prescribed limitations in the RFC assessment. *See Lee v. Colvin*, 631 F. App'x 538, 544 (10th Cir. 2015) (unpublished) (finding unskilled work implies the claimant will not be performing complex tasks). Rather, the RFC assessment and the prescribed limitations must be generally consistent to be adequately incorporated. A moderate limitation in the ability to adapt to changes in the workplace may not be incorporated by a mere restriction to semi-skilled work; however, it may be viewed as incorporated in a limitation to "simple work corresponding to an SVP of one or two" or where the claimant is "limited to simple, routine, repetitive tasks." *Salazar v. Berryhill*, 1:16-cv-1134 GJF, 2018 WL 1508553, at *7 (D.N.M. Mar. 27, 2018).

Here, ALJ Gerstner found that Ms. Carrasco can occasionally interact with coworkers, supervisors, and the public, and that in dealing with changes in the work setting, she is able to make simple work-related decisions. (AR 20). He found that she is limited to performing simple, routine tasks, and making simple work-related decisions in the course of unskilled work. (AR 20, 24). As many other courts in this District have concluded, these limitations account for a moderate difficulty in the area of adapting to changes in the workplace. *See*, *e.g.*, *Knight v. Colvin*, 1:15-cv-0882 KBM, 2016 WL 9489144, at *6 (D.N.M. Dec. 5, 2016) (construing *Smith*, 821 F.3d at 1264); *Lucero v. Saul*, 1:20-cv-518 KK, 2021 WL 2589130, at *12 (D.N.M. June 24, 2021) (finding that

limiting plaintiff to "simple, routine, repetitive tasks requiring only simple work-related decisions and involving only occasional contact with others" accounted for plaintiff's limited ability to respond appropriately to changes in the work setting); *Vigil v. Berryhill*, 1:18-cv-0691 KBM, 2019 WL 2524765, at *6 (D.N.M. June 19, 2019) (finding that limitation to unskilled work with simple, routine tasks and simple work-related decisions can adequately account for "any moderate adaptation limitation" under certain circumstances).

Moreover, despite Ms. Carrasco's argument otherwise, ALJ Gerstner's RFC assessment is adequate under the rationale of *Smith v. Colvin*. There, the psychologist noted a moderate limitation in the claimant's ability to, among other things, "respond appropriately to changes in the workplace." *Smith*, 821 F.3d at 1268. The ALJ in that case did not repeat this limitation verbatim, instead concluding that the claimant "could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. Likewise, here, Dr. Gunter noted that Ms. Carrasco's "ability to respond appropriately to changes in the work setting" is "[m]oderately limited," and ALJ Gerstner states that Ms. Carrasco is "able to perform simple, routine tasks." (AR 20, 100). The Tenth Circuit has held this to be sufficient. *Smith,* 821 F.3d at 1268. Thus, under the rationale of *Smith v. Colvin*, the Court is constrained to find that here the moderate limitations identified by Dr. Gunter were adequately addressed by ALJ Gerstner's decision to limit Ms. Carrasco's RFC to simple, unskilled work with routine tasks. *See Knight*, 2016 WL 9489144, at *5–6; *Rimer v. Berryhill,* 1:17-cv-0696 SMV, 2018 WL 2206927, at *5 (D.N.M. May 14, 2018).

The Court is not persuaded by Ms. Carrasco's distinguishing of *Vigil v. Berryhill*, 1:18-cv-0691 KBM, 2019 WL 2524765 (D.N.M. June 19, 2019). *See* (Doc. 29 at 3, n.1).

16

Ms. Carrasco contends the court there only found that a limitation to "unskilled work with simple, routine tasks and simple work-related decisions" adequately accounted for "any moderate adaptation limitation" because of the ALJ's otherwise detailed explanation. *Id.* (citing *Vigil*, 2019 WL 2524765, at *6). However, in this case, ALJ Gerstner also provided a detailed discussion, which included evidence that does not support a limitation on Ms. Carrasco's ability to react appropriately to change. *See generally* (AR 19, 23). For example, ALJ Gerstner observed that Ms. Carrasco noted in June 2016 that she had "no problems with her personal care and grooming; she could clean her house, cook, and do laundry. She said that she could drive a car, go out alone and shop in stores, count change, pay bills, and manage her [] savings account or checkbook." (AR 19). ALJ Gerstner also observed that "[b]y August 2017, her depression and anxiety were stable" and that she successfully tapered her psychiatric medications. (AR 19).

Ms. Carrasco offers a similarly unpersuasive argument that the Court cannot determine whether ALJ Gerstner meant to incorporate the specific limitation of "forewarned changes" or a "moderate" limitation on Ms. Carrasco's ability to adapt to changes in the workplace in his assessed RFC. (Doc. 29 at 4). However, ALJ Gerstner was not required to use the word "forewarned" or adopt Dr. Gunter's language verbatim in his RFC assessment. *See*, *e.g.*, *Samuels-Boswell v. Saul*, 18-cv-321 SPS, 2020 WL 1700326, at *2 (E.D. Okla. Apr. 8, 2020) (affirming ALJ decision where state agency psychologist found that claimant could adapt to "some forewarned changes in a usually stable work setting," and ALJ found claimant could not adapt to more than "ordinary and routine changes to the work setting or work duties"). The Court therefore finds that an assessment of a moderate limitation in the area of adapting to changes is consistent

17

with Dr. Gunter's finding that Ms. Carrasco "is able to adapt to work setting and some forewarned changes in a usually stable work setting." (AR 101).

In sum, Ms. Carrasco's moderate limitation in her ability to adapt to changes is incorporated in ALJ Gerstner's finding that she is limited to unskilled light work, including six potential jobs with SVP of one or two, and that she is "limited to simple, routine tasks" and can make only "simple work-related decisions." (AR 20, 24-25); *see* *Salazar*, 2018 WL 1508553, at *7. ALJ Gerstner specifically accounted for her limited ability to adapt to change in both his RFC assessment and the hypothetical he provided to VE Provine, stating in his RFC assessment that "[i]n dealing with changes in work setting: she is able to make simple work-related decisions." (AR 20). In the hypothetical ALJ Gerstner posed to VE Provine, he included the limitation that "[c]hanges in the work setting would be limited to simple work-related decisions." (AR 71). Therefore, ALJ Gerstner's omission of any explicit reference to Dr. Gunter's finding of a moderate limitation in Ms. Carrasco's ability to respond appropriately to changes in the workplace was not error.

### iii.   Whether ALJ Gerstner Erred in his Analysis of Dr. Darakjy's Opinion

Next, Ms. Carrasco argues ALJ Gerstner erred in disregarding Dr. Darakjy's opinion that she had a marked limitation in adapting to changes in the workplace. (Doc. 27 at 8). She contends that ALJ Gerstner was required to discuss the weight he assigned to Dr. Darakjy's opinion, and to state the reasons for that weight; she argues that the reasons given by ALJ Gerstner for giving only partial weight to Dr. Darakjy's opinion "are not fully supported by the evidence." *Id.* at 9. Specifically, Ms. Carrasco objects to ALJ Gerstner's statement that he found "no support for marked limitations in

18

the medical file and no treatment for mental health." *Id.* She contends that this was error

and that ALJ Gerstner impermissibly substituted his own medical judgment for that of a

mental health professional. *Id.*

In response, the Commissioner argues that ALJ Gerstner reasonably discounted

Dr. Darakjy's opinion, explaining that the record revealed that Ms. Carrasco had never

undergone mental health counseling, and that her mental impairments were stable with

medication. (Doc. 28 at 6-7). The Commissioner also notes that ALJ Gerstner

adequately explained his reasons in discussing Ms. Carrasco's ability to complete her

activities of daily living, including taking care of her husband and grocery shopping each

week, and in highlighting that Dr. Darakjy's own examination revealed Ms. Carrasco had

"grossly intact cognitive functions." *Id.* at 7. The Commissioner contends that because

Dr. Darakjy's own examination was inconsistent with her opinion that Ms. Carrasco had

marked limitations, it was reasonable for ALJ Gerstner to discount her opinion. *Id.*

ALJs are required to discuss the weight assigned to each medical source

opinion. *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii),

416.927(e)(2)(ii)).[4] That is, when assessing a plaintiff's RFC, an ALJ must explain what

weight she assigns to each opinion and why. *Id.* The ALJ must at least provide an

explanation that is "sufficiently specific to [be] clear to any subsequent reviewers."

*Langley*, 373 F.3d at 1119 (citation omitted). Furthermore, the ALJ's stated reasons for

the assigned weight must be supported by substantial evidence. *See Doyal*, 331 F.3d at

764. Substantial evidence requires that an ALJ discuss uncontroverted evidence she

chooses not to rely on, significantly probative evidence she rejected, and the evidence

---

[4] As stated previously, these regulations apply because Ms. Carrasco's application was filed
prior to March 27, 2017. *See* 82 Fed. Reg. 5844 (Jan. 18, 2017).

supporting her decision. *Clifton*, 79 F.3d at 1009. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax*, 489 F.3d at 1084.

Dr. Darakjy, a state agency consultant, examined Ms. Carrasco once, on August 25, 2016. (AR 702). Dr. Darakjy noted in her evaluation that Ms. Carrasco has a moderate to marked limitation in her ability to sustain concentration and task persistence, as well as a moderate limitation in her ability to carry out instructions. (AR 704). She additionally stated that Ms. Carrasco is moderately limited in her ability to interact with the public, coworkers and supervisors, and that she is markedly limited in her ability to adapt to changes in the workplace, to be aware of normal hazards and react appropriately, to use public transportation, or to travel to unfamiliar places. (AR 704). Dr. Darakjy found Ms. Carrasco to have a depressed mood with congruent affect. (AR 703).

Dr. Darakjy also found, however, that Ms. Carrasco is not limited in her ability to understand and remember instructions, and attributed her insomnia, as well as her depressive disorder with anxious distress, to her cancer diagnosis. (AR 704). Dr. Darakjy noted that Ms. Carrasco arrived on time and was appropriately groomed, and that she was alert and oriented. (AR 703). Dr. Darakjy found that Ms. Carrasco was responsive to the surroundings, and that her "cognitive functions are grossly intact." (AR 703). She observed that her speech was "linear, clear, and comprehensible, with no

20

apparent deficits," and noted no gross deficits of long-term memory. (AR 703). She observed that attention and concentration "appeared adequate for the tasks at hand" and observed "no hyperactivity," that her "thought processes were not delusional," and that Ms. Carrasco had "appropriate eye contact and was cooperative." (AR 703).

In determining Ms. Carrasco's mental RFC, ALJ Gerstner gave only partial weight to Dr. Darakjy's opinion. (AR 23). He noted that Dr. Darakjy herself observed Ms. Carrasco was "fully oriented . . . responsive to the surroundings and cognitive functions were grossly intact" and also noted that Dr. Darakjy assessed "moderate to marked limitations sustaining concentration, persistence and pace; moderate limitations with social interaction; and marked limitations with her ability to adapt to changes in the workplace, being aware of hazards and acting accordingly, using public transportation, and traveling to unfamiliar places." (AR 23).

ALJ Gerstner discussed Dr. Darakjy's opinion at length, and provided appropriate explanations for rejecting the medical evidence he did not incorporate in his final RFC assessment. For example, in addition to the above, ALJ Gerstner explained that the record shows Ms. Carrasco's "mental impairments are stable with the use of medications," and that "[m]ost of her complaints are related to her hypothyroidism and her history of cancer surgery, rather than mental issues." (AR 23).

This assessment is congruent with the Court's own review of the record. (AR 57, 777, 780, 971-972, 977). For example, on February 27, 2018, the "patient screening for depression using standardized depression assessment tool" revealed "no significant symptoms." (AR 977). The record shows that Ms. Carrasco was able to successfully taper her medication for anxiety and insomnia by May 29, 2018. (AR 971-972). Ms.

Carrasco also testified at the hearing that her anti-anxiety medication and her sleeping medication do help her mental health symptoms. (AR 57). The Court can thus follow ALJ Gerstner's logic for discounting Dr. Darakjy's opinion, and is not left to guess at his reasons for assigning only partial weight to her opinion. *See Guadagnoli*, 2016 WL 9777190, at *6; *Langley*, 373 F.3d at 1119.

The Court disagrees with Ms. Carrasco that ALJ Gerstner was inconsistent in finding that there was "no treatment for mental health" while having "just detailed the mental health medication prescribed by [Ms. Carrasco's] providers." (Doc. 27 at 4). In context, it is clear that ALJ Gerstner is referring to treatment via *therapy* as opposed to treatment via *medication*. Elsewhere in his decision, when discussing this, he notes the record shows diagnoses of depression and anxiety related to her cancer treatment, as well as successful tapering off her medication. (AR 21, 23). In other words, he distinguishes therapy treatment from medication treatment. In fact, Ms. Carrasco admits she did not obtain psychological counseling. (Doc. 27 at 4, 9). Thus, the Court finds that ALJ Gerstner sufficiently explained his decision to afford Dr. Darakjy's opinion limited weight.

Finally, the Court finds no error in ALJ Gerstner's mere omission of the word "adapt" or "adaptability," as Ms. Carrasco urges. (Doc. 29 at 1). As explained above, ALJ Gerstner specifically accounted for Ms. Carrasco's ability to "deal[] with changes in work setting" in his RFC assessment and in his statement that "[c]hanges in the work setting would be limited to simple work-related decisions" in his hypothetical to VE Provine. (AR 20, 71). This, therefore, was not error. *See Keyes-Zachary*, 695 F.3d at 1166 (stating that the court "must[] exercise common sense" and "cannot insist on

22

technical perfection"). Thus, the Court finds that ALJ Gerstner supported his decision

with substantial evidence, and **RECOMMMENDS** Ms. Carrasco's Motion be **DENIED**.

### V.    Conclusion

For the previously stated reasons, the Court finds that ALJ Gerstner did not

commit the errors alleged by Ms. Carrasco. In addition, the Court finds that substantial

evidence supports ALJ Gerstner's determinations challenged by Ms. Carrasco.

Consistent with the foregoing, the Court **RECOMMENDS** that Ms. Carrasco's

*Motion to Remand or Reverse Agency Decision*, (Doc. 26), be **DENIED** and the case be

**DISMISSED WITH PREJUDICE**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a
copy of these Proposed Findings and Recommended Disposition they may file written
objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party
must file any objections with the Clerk of the District Court within the fourteen-
day period if that party wants to have appellate review of the proposed findings
and recommended disposition. If no objections are filed, no appellate review will
be allowed.**

---

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE